| |
|---|
| **Owens v Mwando** |
| 2024 NY Slip Op 30799(U) |
| March 12, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 101162/2017 |
| Judge: John J. Kelley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     <u>HON. JOHN J. KELLEY</u>                          PART                    56M

                            *Justice*

-------------------------------------------------------------------------------X

DAMITA OWENS,                                                    INDEX NO.            101162/2017

                                    Plaintiff,                          MOTION DATE          11/14/2023

                        - v -                                       MOTION SEQ. NO.         005

DR. JOHN MWANDO and DR. CASEY PIDICH,                **DECISION + ORDER ON MOTION**

                                    Defendants.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 005) 6, 7, 8, 9, 10, 11, 12, 13, 14, 15

were read on this motion to/for                      <u>            DISMISSAL            </u>.

In this action to recover damages for podiatric malpractice, the defendant Dr. Casey Pidich moves pursuant to CPLR 3212 for summary judgment dismissing the complaint insofar as asserted against her. The plaintiff does not oppose the motion. The motion is granted, without opposition, on the condition that Pidich submit the contents of her affirmation in the form of an affidavit. The court, on its own motion, directs an inquest on the issue of damages as against the defendant Dr. John Mawando.

The crux of the plaintiff's claims against Pidich is that, on February 17, 2015, Pidich was the assistant surgeon to Mawando when Mawando and Pidich together negligently performed a bunionectomy on the plaintiff's left foot, and that, on February 24, 2015 Pidich against was the assistant surgeon to Mawando when Mawando and Pidich together negligently performed a further bunionectomy on the plaintiff's left foot, an arthroplasty of her left fourth digit, and a tenotomy and capsulotomy of her left fourth digit.

On February 11, 2015, the plaintiff sought treatment with Mawando for pain, secondary to hammertoes. On February 17, 2015, the plaintiff underwent a bunionectomy of the

**101162/2017   OWENS, DAMITA vs. MAWANDO, JOHN**
**Motion No.  005**

**Page 1 of 9**

[* 1]

left foot, with Mawando as the surgeon and Pidich as the assistant surgeon. On February 24, 2015, the plaintiff underwent a second bunionectomy of the left foot, as well as an arthroplasty of the left fourth digit, and tenotomy and capsulotomy of the left fourth digit, with Mawando as the surgeon and Pidich as the assistant surgeon. On March 4, 2015, the plaintiff returned to see Mawando, at which time the surgical dressing was changed, Mawando told her to use a stimulator, and recommended that she return in one week. According to Pidich, x-rays taken on March 9, 2015 showed the area to be within normal limits. The plaintiff followed up on March 16, 2015, at which time Mawando noted mild edema, and advised the plaintiff to begin physical therapy. The plaintiff returned to Mawando on March 23, 2015, at which time Mawando noted that she was still using a cane and walking on her heel. Mawando thus advised the plaintiff to ambulate normally and begin physical therapy. Pidich alleged that x-ray images taken on March 23, 2015 and March 30, 2015 were normal, while Mawando's office notes for March 30, 2015 indicated that the plaintiff reported no pain, and reiterated Mawando's instructions that the plaintiff undergo physical therapy. The plaintiff again visited Mawando on April 6, 2015, and apparently made no complaints, although she was still walking on her heels and was advised that this slowed the healing process. The plaintiff still had not begun physical therapy as of that date. The plaintiff then failed to appear for a scheduled April 13, 2015 appointment.

On April 14, 2015, the plaintiff called Mawando's office and complained of foot pain, but failed to appear for a rescheduled April 20, 2015 appointment. On May 28, 2015, the plaintiff called Mawando and demanded to have her medical records transferred to another health-care provider. On or about October 1, 2015, the plaintiff sought treatment with podiatrist Michael Trepal, DPM, complaining that she had endured pain subsequent to the procedures performed in February 2015. According to Pidich, an x-ray taken on that date "showed good alignment." The plaintiff returned to see Dr. Trepal on or about November 18, 2015. His notes indicated that additional surgery was not warranted, and that the plaintiff declined to employ prefabricated arch supports. On or about January 21, 2016, the plaintiff reported to Dr. Trepal that she was

**101162/2017   OWENS, DAMITA vs. MAWANDO, JOHN**
**Motion No.  005**

**Page 2 of 9**

concerned that the surgeons who performed the February 2015 surgeries did something wrong, in response to which Dr. Trepal "told her the surgery looks okay and sometimes patients have continued pain." Nonetheless, Dr. Trepal performed follow-up surgery on the plaintiff at Downstate Medical Center on March 23, 2016.

In connection with the March 23, 2016 surgery, Dr. Trepal's initial pre-operative diagnosis was the presence of painful surgical screws at the first metatarsal left foot and at the proximal phalanx of the hallux of the left foot, while his second pre-operative diagnosis was painful second metatarsophalangeal joint (MTPJ), and his third pre-operative diagnosis was rupture of the plantar plate secondary to MTPJ. The post-operative diagnosis was the same as the three pre-operative diagnoses. According to Pidich, the operative report noted that the plaintiff had prior bunion surgery with results that were "not satisfactory in the patient's estimation." According to the operative report, the procedure involved the removal of the deep buried hardware at the first metatarsal left foot, debulking of the screw proximal phalanx of hallux of the left foot, Weil shortening metatarsal osteotomy of the second metatarsal of the left foot with screw fixation, and open reduction of the second MTPJ, with repair of the plantar plate of the left foot. As Pidich recounted it, in the months following the March 23, 2016 surgery, the plaintiff initially reported to Dr. Trepal that she experienced no pain in the foot, but began complaining of left-foot cramping by June 16, 2016, continuing through 2017. On November 30, 2017, Dr. Trepal performed additional surgery, consisting of the removal of the "painful" hardware at the first metatarsal bone of the right foot.

In her affirmation, Pidich opined that, inasmuch as she was only an assistant surgeon who followed Mawando's instructions, and made no independent medical judgments, she could not be held liable even if Mawando had committed malpractice. In any event, she explicitly opined that neither she nor Mawando departed from good and accepted podiatric practice in the performance of the procedures and the post-operative care that they rendered between February 17, 2015 and February 24, 2015, the last date that she was involved with the plaintiff's

**101162/2017   OWENS, DAMITA vs. MAWANDO, JOHN**                                                      **Page 3 of 9**
**Motion No.  005**

3 of 9

[* 3]

treatment, and that nothing that she did or did not do caused or contributed to the plaintiff's injuries or the need for additional surgeries and treatment, particularly in light of the plaintiff's determination to forego physical therapy. Specifically, she concluded that the plaintiff was properly examined and assessed for candidacy for podiatric surgery, and received proper care and treatment during the procedures on February 17, 2015 and February 24, 2015, and that she received appropriate post-operative treatment following the two procedures in February 2015. She also averred that the February 2015 surgeries were successful, and that there were no abnormal developments or complications arising from those procedures.

It is well settled that the movant on a summary judgment motion "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr*., 64 NY2d 851, 853 [1985] [citations omitted]). The motion must be supported by evidence in admissible form (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]), as well as the pleadings and other proof such as affidavits, depositions, and written admissions (*see* CPLR 3212). The facts must be viewed in the light most favorable to the non-moving party (*see Vega v Restani Constr. Corp*., 18 NY3d 499, 503 [2012]). In other words, "[i]n determining whether summary judgment is appropriate, the motion court should draw all reasonable inferences in favor of the nonmoving party and should not pass on issues of credibility" (*Garcia v J.C. Duggan, Inc.*, 180 AD2d 579, 580 [1st Dept 1992]). Once the movant meets his or her burden, it is incumbent upon the non-moving party to establish the existence of material issues of fact (*see Vega v Restani Constr. Corp*., 18 NY3d at 503). A movant's failure to make a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers (*see id.; Medina v Fischer Mills Condo Assn*., 181 AD3d 448, 449 [1st Dept 2020]).

"The drastic remedy of summary judgment, which deprives a party of his [or her] day in court, should not be granted where there is any doubt as to the existence of triable issues or the issue is even 'arguable'" (*De Paris v Women's Natl. Republican Club, Inc.,* 148 AD3d 401, 403-

**101162/2017   OWENS, DAMITA vs. MAWANDO, JOHN**
**Motion No.  005**

**Page 4 of 9**

404 [1st Dept 2017]; *see Bronx-Lebanon Hosp. Ctr. v Mount Eden Ctr.*, 161 AD2d 480, 480 [1st Dept 1990]). Thus, a moving defendant does not meet his or her burden of affirmatively establishing entitlement to judgment as a matter of law merely by pointing to gaps in the plaintiff's case. He or she must affirmatively demonstrate the merit of his or her defense (*see Koulermos v A.O. Smith Water Prods.*, 137 AD3d 575, 576 [1st Dept 2016]; *Katz v United Synagogue of Conservative Judaism*, 135 AD3d 458, 462 [1st Dept 2016]).

"To sustain a cause of action for medical malpractice, a plaintiff must prove two essential elements: (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of plaintiff's injury" (*Frye v Montefiore Med. Ctr.*, 70 AD3d 15, 24 [1st Dept 2009]; *see Roques v Noble*, 73 AD3d 204, 206 [1st Dept 2010]; *Elias v Bash*, 54 AD3d 354, 357 [2d Dept 2008]; *DeFilippo v New York Downtown Hosp.*, 10 AD3d 521, 522 [1st Dept 2004]).

To make a prima facie showing of entitlement to judgment as a matter of law, a defendant physician moving for summary judgment must establish the absence of a triable issue of fact as to his or her alleged departure from accepted standards of medical practice (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Frye v Montefiore Med. Ctr.*, 70 AD3d at 24) or establish that the plaintiff was not injured by such treatment (*see McGuigan v Centereach Mgt. Group, Inc.*, 94 AD3d 955 [2d Dept 2012]; *Sharp v Weber*, 77 AD3d 812 [2d Dept 2010]; *see generally Stukas v Streiter*, 83 AD3d 18 [2d Dept 2011]). To satisfy the burden, a defendant must present expert opinion testimony that is supported by the facts in the record, addresses the essential allegations in the complaint or the bill of particulars, and is detailed, specific, and factual in nature (*see Roques v Noble*, 73 AD3d at 206; *Joyner-Pack v Sykes*, 54 AD3d 727, 729 [2d Dept 2008]; *Koi Hou Chan v Yeung*, 66 AD3d 642 [2d Dept 2009]; *Jones v Ricciardelli*, 40 AD3d 935 [2d Dept 2007]). If the expert's opinion is not based on facts in the record, the facts must be personally known to the expert and, in any event, the opinion of a defendant's expert should specify "in what way" the patient's treatment was proper and

**101162/2017   OWENS, DAMITA vs. MAWANDO, JOHN**
**Motion No.  005**

**Page 5 of 9**

"elucidate the standard of care" (*Ocasio-Gary v Lawrence Hospital,* 69 AD3d 403, 404 [1st Dept 2010]). Stated another way, the defendant's expert's opinion must "explain 'what defendant did and why'" (*id.*, quoting *Wasserman v Carella*, 307 AD2d 225, 226 [1st Dept 2003]). Moreover, as noted, to satisfy his or her burden on a motion for summary judgment, a defendant must address and rebut specific allegations of malpractice set forth in the plaintiff's bill of particulars (*see Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d 1043 [2d Dept 2010]; *Grant v Hudson Val. Hosp. Ctr.,* 55 AD3d 874 [2d Dept 2008]; *Terranova v Finklea*, 45 AD3d 572 [2d Dept 2007]).

Once satisfied by the defendant, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact by submitting an expert's affidavit or affirmation attesting to a departure from accepted medical practice and/or opining that the defendant's acts or omissions were a competent producing cause of the plaintiff's injuries (*see Roques v Noble*, 73 AD3d at 207; *Landry v Jakubowitz*, 68 AD3d 728 [2d Dept 2009]; *Luu v Paskowski*, 57 AD3d 856 [2d Dept 2008]). Thus, to defeat a defendant's prima facie showing of entitlement to judgment as a matter of law, a plaintiff must produce expert testimony regarding specific acts of malpractice, and not just testimony that contains "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice" (*Alvarez v Prospect Hosp.,* 68 NY2d at 325; *see Frye v Montefiore Med. Ctr.*, 70 AD3d at 24). In most instances, the opinion of a qualified expert that the plaintiff's injuries resulted from a deviation from relevant industry or medical standards is sufficient to preclude an award of summary judgment in a defendant's favor (*see Murphy v Conner*, 84 NY2d 969, 972 [1994]; *Frye v Montefiore Med. Ctr.*, 70 AD3d at 24).

Pidich made a prima facie showing, through her own affirmation and the medical records that she submitted, that she did not depart from good and accepted podiatric practice, and that nothing that she did or did not do caused or contributed to the plaintiff's injuries or need for further surgeries. The court notes that "a party who is qualified by reason of education or training in a specific field, may serve as his [or her] own expert" in supporting his or her own

**101162/2017 OWENS, DAMITA vs. MAWANDO, JOHN** **Page 6 of 9**
**Motion No. 005**

6 of 9

[* 6]

summary judgment motion (*Bade v Partridge*, 2009 NY Slip Op 52435[U],*5, 25 Misc 3d 1236[A] [Sup Ct, Nassau County, Nov. 23, 2009]; *see Rodriguez v Pacificare, Inc*., 980 F2d 1014, 1019 [5th Cir 1993]; *Deconcilio v Northwell Health Inc*., 2023 NY Slip Op 33799[U], *5, 2023 NY Misc LEXIS 11570, *8 [Sup Ct, N.Y. County, Oct. 20, 2023] [Kelley, J.]; *Attia v Automax*, 2015 US Dist LEXIS 127330, *17-18, 2015 WL 5580501 [SD NY, Sep. 21, 2015]).  Hence, the plaintiff's reliance on her own expert opinion, as set forth in her affirmation, was proper.  Moreover, "'[w]hen supervised medical personnel are not exercising their independent medical judgment, they cannot be held liable for medical malpractice unless the directions from the supervising superior or doctor so greatly deviates from normal medical practice that they should be held liable for failing to intervene'" (*Zhuzhingo v Milligan*, 121 AD3d 1103, 1106 [2d Dept 2014], quoting *Bellafiore v Ricotta*, 83 AD3d 632, 633 [2d Dept 2011]; *see Costello v Kirmani*, 54 AD3d 656, 657 [2d Dept 2008]; *Soto v Andaz*, 8 AD3d 470, 471 [2d Dept 2004]).  Inasmuch as Pidich established, prima facie, that she was under Mawando's supervision and did not exercise independent medical judgment, she demonstrated that she may not be held liable for malpractice.

This motion originally was returnable on March 28, 2023, but the return date was adjourned on consent four times by the plaintiff's then-counsel and Pidich's counsel.  The plaintiff's new attorney was substituted in on July 27, 2023, and the court granted two additional adjournments of the return date to permit new counsel to submit opposition papers, but counsel has not done so.  Since the plaintiff did not oppose the motion, she has failed to raise a triable issue of fact in opposition to the prima facie showings that Pidich made and, hence, an award of summary judgment to Pidich would be appropriate on the merits.

Nonetheless, the court notes that, since Pidich is a party to the action, she may not submit an affirmation as a vehicle for providing the court with the facts or expert opinions underlying or relevant to the motion.  CPLR 2106 does not afford this privilege to health-care providers, such as podiatrists, who are parties to an action (*see John Harris P.C. v Krauss*, 87

**101162/2017   OWENS, DAMITA vs. MAWANDO, JOHN**
**Motion No.  005**

**Page 7 of 9**

AD3d 469, 469 [1st Dept 2011]; *Muniz v Katlowitz*, 49 AD3d 511, 513 [2d Dept 2008]). Instead, "to make a competent, admissible affirmation," a health-care provider who is a party "must first appear before a notary or other such official and formally declare the truth of the contents of the document" (*Doumanis v Conzo,* 265 AD2d 296, 296 [2d Dept 1999]).

Hence, the court conditionally awards summary judgment to Pidich, and directs her to submit the contents of her affirmation in the form of an affidavit, upon which the court will unconditionally grant her motion for summary judgment dismissing the complaint insofar as asserted against her.

Finally, this court notes that, in an order dated March 3, 2020, the court (Madden, J.) directed that the Clerk enter a default judgment on the issue of liability against Mawando, based on his failure to appear at a February 6, 2020 discovery conference, without prejudice to a motion to vacate his default. Although Mawando, by letter dated February 4, 2021, set forth a one-sentence request to vacate his default, he has not made a formal motion for that relief articulating a reasonable excuse for his failure to appear at the February 6, 2020 conference or a potentially meritorious defense to the action. The inquest has yet to be conducted. The court thus directs the plaintiff to serve and file a nonjury note of issue forthwith, and directs the plaintiff and Mawando to appear on May 2, 2024 at 10:00 a.m. for an inquest to assess damages against Mawando.

In light of the foregoing, it is,

ORDERED that Casey Pidich's motion is conditionally granted, without opposition, and she shall be, upon the submission of an appropriate affidavit, awarded summary judgment dismissing the complaint insofar as asserted against her; and it is further,

ORDERED that the plaintiff shall serve and file a nonjury note of issue forthwith; and it is further,

ORDERED that the plaintiff and the defendant Dr. John Mawando, should he be so advised, shall appear before this court on May 2, 2024 at 10:00 a.m., in Room 204 of the

**101162/2017   OWENS, DAMITA vs. MAWANDO, JOHN**                                                    **Page 8 of 9**
**Motion No.  005**

courthouse located at 71 Thomas Street, New York, New York 10013, or on any future date scheduled by the court, for an inquest to assess damages against Dr. John Mawando; and it is further,

ORDERED that, within 20 days of the entry of this order, the plaintiff shall serve a copy of this order with notice of entry upon Dr. John Mawando by overnight delivery at either his last known residence or business address.

This constitutes the Decision and Order of the court.

| 3/12/2024 | |
|-----------|--|
| DATE | JOHN J. KELLEY, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|------------|--|---------------|--|---|----------------------|--|--|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**101162/2017   OWENS, DAMITA vs. MAWANDO, JOHN**
**Motion No.  005**

**Page 9 of 9**