| **Lazar v Lorich** |
|:---:|
| 2026 NY Slip Op 30754(U) |
| February 25, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 805037/2015 |
| Judge: Hasa A. Kingo |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:     HON. HASA A. KINGO        PART        65M

*Justice*

------------------------------------------------------------------------------X

ADOR LAZAR

                         Plaintiff,

              - v -

DEAN LORICH, DENIS NAM, BENJAMIN RICCIARDI,
VENU NEMANI, NEW YORK PRESBYTERIAN/WEILL
CORNELL MEDICAL CENTER, HOSPITAL FOR SPECIAL
SURGERY

                         Defendants.

------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 805037/2015 |
| MOTION DATE | 06/02/2025, 06/02/2025 |
| MOTION SEQ. NO. | 006 007 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 456, 459, 460, 461, 462, 467, 469, 470, 471, 472, 473, 474

were read on this motion for                  SUMMARY JUDGMENT      .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 457, 463, 464, 465, 466, 468

were read on this motion for                  SUMMARY JUDGMENT      .

       With motion sequence 006, defendants Deborah A. Clark Lorich, as preliminary executor of the Estate of Dean G. Lorich, M.D. (together, the "Lorich Estate"), and Hospital for Special Surgery ("HSS") move for an order (i) dismissing the complaint as against Denis Nam, M.D. ("Dr. Nam") as abandoned pursuant to CPLR § 3215(c), (ii) granting summary judgment dismissing all claims against the Lorich Estate and HSS, and/or (iii) alternatively dismissing plaintiff's claims that the Lorich Estate and HSS are vicariously liable for alleged malpractice and lack of informed consent attributable to former resident defendants Venu Nemani, M.D. and Benjamin Ricciardi, M.D.

       With motion sequence 007, defendant New York Presbyterian/Weill Cornell Medical Center ("NYPH") moves for summary judgment dismissing all claims against it, including claims premised on (i) direct negligence/malpractice by NYPH staff, (ii) proximate cause, (iii) lack of informed consent, (iv) vicarious liability for allegedly negligent non-employee physicians, and (v) negligent hiring/supervision.

For the reasons that follow, the court (a) grants that branch of motion sequence 006 seeking dismissal of the complaint as against Dr. Nam as abandoned pursuant to CPLR § 3215(c); (b) otherwise denies motion sequence 006; and (c) grants motion sequence 007 in its entirety.

## BACKGROUND AND PROCEDURAL HISTORY

This is a medical malpractice action arising out of plaintiff Ador Lazar's treatment in March 2012 for a left displaced femoral neck fracture, including surgical fixation performed by Dr. Lorich, with resident participation, at NYPH, and subsequent postoperative care and follow-up. The pleadings and bills of particulars (and supplements) allege, in substance, that defendants departed from accepted medical practice by electing an inappropriate operative strategy for the fracture; by utilizing recombinant bone morphogenetic protein (BMP-2), frequently referenced in the record as "Infuse," and an allograft in a manner plaintiff characterizes as non-indicated and experimental; by failing to timely diagnose and treat infection/osteomyelitis and/or related postoperative complications; and by failing to obtain informed consent, including for the assertedly off-label use of BMP-2/Infuse and graft material.

The action was commenced in 2015 and proceeded through discovery, including depositions. Defendants now move for summary judgment. Plaintiff opposes both motions, primarily relying on an expert affirmation in orthopedic surgery, and argues that material disputes require a trial.

The court has considered all papers submitted on the motions and, to the extent not specifically discussed in this decision, finds the parties' remaining contentions either without merit or not dispositive.

## ARGUMENTS

The Lorich Estate and HSS contend that plaintiff's claims against them cannot survive summary judgment because their orthopedic expert ("Dr. Wixted") opines that the surgical treatment and postoperative management comported with accepted practice; that the complained-of outcomes, including avascular necrosis ("AVN") and heterotopic ossification, are recognized risks of the underlying injury and/or procedure; and that plaintiff cannot establish a departure or proximate causation. They further argue that, as to lack of informed consent, the claim fails on the merits and is additionally undermined because plaintiff's proof concerning any alleged preoperative conversation with Dr. Lorich is inadmissible under the Dead Man's Statute (CPLR § 4519), given Dr. Lorich's death. Finally, they argue that plaintiff's long failure to pursue a default judgment against Dr. Nam mandates dismissal as abandoned under CPLR § 3215(c), and that the claims of vicarious liability arising from the acts of residents Nemani and Ricciardi should be dismissed because those defendants have been discontinued from the case.

NYPH argues that it is entitled to judgment as a matter of law because its experts (orthopedics and infectious diseases) establish the absence of departures and the absence of proximate causation as to NYPH's care; that plaintiff was not, as a matter of law, deprived of informed consent by NYPH; that NYPH cannot be held vicariously liable for the acts of non-employee physicians (including Dr. Lorich and the residents, who were employed by HSS)

805037/2015 LAZAR, ADOR vs. LORICH, MD, DEAN G. Page 2 of 8
Motion No. 006

2 of 8

because the record negates agency/control in fact and negates ostensible agency; and that plaintiff's negligent hiring theory is legally and factually unsupported.

Plaintiff responds that summary judgment is inappropriate because the parties' experts sharply disagree about whether the selection of operative technique and the use of BMP-2/Infuse and allograft were indicated under the circumstances and consistent with accepted practice in 2012, and whether those decisions caused plaintiff's postoperative course and longer-term *sequelae*. Plaintiff further contends that the informed consent cause of action survives because the records, including consent documentation, purportedly do not reflect disclosure of off-label/heightened risks or adequate discussion of alternatives; and that NYPH should remain in the case under an ostensible agency theory given plaintiff's presentation to the NYPH emergency department and receipt of perioperative hospital care.

## DISCUSSION

Summary judgment is a "drastic remedy" that should be granted only where the movant has demonstrated entitlement to judgment as a matter of law and the record shows no triable issue of fact (*Andre v Pomeroy*, 35 NY2d 361, 364 [1974]; *see also Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]).

The movant bears the initial burden of making a prima facie showing of entitlement to judgment as a matter of law; failure to do so requires denial regardless of the sufficiency of the opposing papers (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Once that showing is made, the burden shifts to the opponent to produce evidentiary proof in admissible form sufficient to establish a material issue of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

In a medical malpractice action, a defendant establishes prima facie entitlement to summary judgment by showing, through competent evidence (typically expert medical opinion), either (i) no departure from good and accepted practice, or (ii) that any alleged departure was not a proximate cause of the injuries alleged (*Roques v Noble*, 73 AD3d 204, 206 [1st Dept 2010]). Expert opinion must be grounded in facts in the record (or personally known to the witness), and may not rest on assumptions of material facts unsupported by the evidence (*Cassano v Hagstrom*, 5 NY2d 643, 646 [1959]).

Similarly, lack of informed consent is a statutory malpractice claim governed by Public Health Law § 2805-d. It is meant to redress a failure to disclose alternatives and reasonably foreseeable risks/benefits that a reasonable practitioner would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation (*Karlin v IVF Am.*, 93 NY2d 282, 292 [1999]). To prevail, a plaintiff must prove (1) inadequate disclosure, (2) that a reasonably prudent person in the patient's position would not have undergone the procedure if fully informed, and (3) that the lack of informed consent is a proximate cause of the injury (Public Health Law § 2805-d[1], [3]).

When a defendant moves for summary judgment against a lack of informed consent claim, the evidentiary sufficiency of the parties' expert disclosures is often determinative: where

[* 3]

defendant establishes prima facie entitlement with competent proof, plaintiff must raise a triable issue with expert affirmation stating with certainty that the information allegedly provided departed from what a reasonable practitioner would have disclosed (*Leighton v Lowenberg*, 103 AD3d 530, 530 [1st Dept 2013]).

With those standards in mind, the court turns to each branch of requested relief.

## I. Dismissal of the complaint against Dr. Nam as abandoned (CPLR § 3215[c])

CPLR § 3215(c) provides, in mandatory terms, that if a plaintiff fails to take proceedings for the entry of judgment within one year after a defendant's default, the court "shall" dismiss the complaint as abandoned unless "sufficient cause" is shown why dismissal is unwarranted (CPLR § 3215[c]). Consistent with the statutory language, appellate authority emphasizes the mandatory nature of dismissal absent a timely default-judgment application or a sufficient-cause showing (*see e.g. Giglio v NTIMP, Inc.*, 86 AD3d 301, 307-308 [2d Dept 2011]).

Here, movants demonstrate (and plaintiff does not meaningfully dispute in opposition) that no default-judgment proceedings were taken against Dr. Nam within the statutory period, and no sufficient cause is presented to excuse that failure. Under these circumstances, dismissal as abandoned is required.

Accordingly, that branch of motion sequence 006 is granted.

## II. Summary judgment for the Lorich Estate and HSS on medical malpractice and lack of informed consent.

The Lorich Estate and HSS submit that they have met their prima facie burden through submission of an expert orthopedic opinion supported by the medical record and deposition testimony concluding that the surgical plan, intraoperative choices (including use of BMP-2/Infuse and graft), and postoperative management were within accepted practice and did not proximately cause plaintiff's claimed injuries. In addition, they invoke Appellate Division, First Department, authority recognizing that a defendant's medical expert submission must address the essential factual allegations in the complaint and bills of particulars to establish prima facie entitlement (*Roques*, 73 AD3d at 207; *see also Cregan v Sachs*, 65 AD3d 101, 108 [1st Dept 2009]; *Wasserman v Carella*, 307 AD2d 225, 226 [1st Dept 2003]).

On this record, the court is satisfied that the Lorich Estate and HSS have made a prima facie showing sufficient to shift the burden. They have not merely offered "bare conclusory denials" of negligence, but have presented the type of expert-driven proof ordinarily required on such a motion (*Fiore v Galang*, 64 NY2d 999, 1000-1001 [1985]). Thus, the burden shifts to plaintiff to raise triable issues.

Plaintiff does so. Plaintiff's opposing expert affirmation takes direct issue with the core medical judgments at the heart of the case: whether, in 2012, the chosen operative strategy and the use of BMP-2/Infuse with an allograft were indicated for this patient's fracture pattern and clinical circumstances; whether those choices unreasonably increased the risk of complications alleged in

**805037/2015   LAZAR, ADOR vs. LORICH, MD, DEAN G.**                                    **Page 4 of 8**
**Motion No. 006**

4 of 8

the bills of particulars; and whether the postoperative course was appropriately managed and monitored. Plaintiff's expert further disputes causation, opining that the asserted departures were a substantial factor in producing plaintiff's complications and functional outcome.

It is well settled that "summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (*Roques*, 73 AD3d at 207 [internal quotation marks and citations omitted]). The court's task on these motions is not to resolve the "battle of the experts," but to determine whether the opposing proof—viewed in the light most favorable to the nonmovant—raises issues requiring trial (*Andre*, 35 NY2d at 364; *Ortiz*, 18 NY3d at 339).

The Lorich Estate and HSS argue that plaintiff's causation theory is speculative, particularly to the extent it rests on a disputed premise of infection/osteomyelitis and seeks to infer causation from imaging and postoperative developments. The court is mindful that an expert may not assume a material fact unsupported by the record (*Cassano*, 5 NY2d at 646). But the parties' papers also make clear that the postoperative course included a clinically significant complication workup and treatment course and that the parties' experts draw competing inferences from the record. Where, as here, the competing expert opinions are grounded in the medical record and articulate a causal mechanism—rather than offering conclusory assertions—those disputes are for a factfinder (*Roques*, 73 AD3d at 206-207).

Accordingly, triable issues of fact preclude summary judgment for the Lorich Estate and HSS, including, at minimum, the following material issues: 1.) Whether the operative plan and technique selected for the displaced femoral neck fracture (including the decision to proceed with ORIF rather than an alternative approach), and the intraoperative decision to use BMP-2/Infuse and bone graft, were indicated and consistent with accepted orthopedic practice in 2012, or instead constituted a departure; 2.) Whether the use of BMP-2/Infuse and graft—particularly as employed here—materially increased the risk of the specific postoperative complications alleged, and whether those complications (including heterotopic ossification and/or other sequelae) are attributable to the alleged departures as opposed to the natural course and known risks of the fracture and operative fixation; 3.) Whether defendants' postoperative monitoring and treatment decisions, including the timing and adequacy of evaluation and intervention for suspected complications, complied with accepted standards; and 4.) Whether any departure was a substantial factor in producing plaintiff's claimed injuries and need for subsequent procedures and limitations.

The same conclusion applies to the lack of informed consent claim as asserted against the Lorich Estate and HSS. The informed consent cause of action entails distinct elements, and it is not extinguished merely because a malpractice claim is disputed (*Karlin*, 93 NY2d at 292; Public Health Law § 2805-d). Plaintiff's expert and plaintiff's arguments raise triable issues as to whether a reasonable practitioner would have disclosed the assertedly off-label nature of the BMP-2/Infuse use (and any material alternatives and risks), whether the disclosure reflected in the documentary record was qualitatively sufficient, and whether a reasonably prudent person in plaintiff's position would have declined the procedure (or a material component of it) if fully informed (*Leighton*, 103 AD3d at 530).

805037/2015   LAZAR, ADOR vs. LORICH, MD, DEAN G.                    Page 5 of 8
Motion No. 006

5 of 8

Finally, the Lorich Estate's reliance on CPLR § 4519 (the Dead Man's Statute) does not warrant summary dismissal of the informed consent claim at this stage. The statute is designed to protect an estate from testimony by an interested witness concerning personal transactions or communications with the decedent. However, "evidence excludable under the Dead Man's Statute should not be used to support summary judgment," and documentary evidence may be admissible if properly authenticated by a source other than the interested witness's testimony about the transaction (*Acevedo v Audubon Mgt.*, 280 AD2d 91, 95 [1st Dept 2001]; *Phillips v Kantor & Co.*, 31 NY2d 307, 313-314 [1972]). Here, the informed-consent dispute, as framed, turns significantly on documentary clinical records and expert opinion as to qualitative adequacy of disclosure, and those issues are not resolved as a matter of law by invocation of CPLR § 4519.

Accordingly, other than the abandonment relief addressed above, motion sequence 006 is denied.

### III.  Alternative request to dismiss vicarious-liability claims tied to discontinued residents

Movants alternatively seek dismissal of claims that the Lorich Estate and HSS are vicariously liable for the acts of former resident defendants who have been discontinued. As a matter of New York law, vicarious liability is derivative in the sense that, where there has been a determination on the merits that the agent/employee was not negligent, vicarious liability cannot lie against the principal/employer (*Escobar v New York Hosp.*, 111 AD2d 128, 129 [1st Dept 1985]). But discontinuance of claims against an employee does not automatically bar continuation of claims against the employer where there has been no judicial determination on the merits and the discontinuance (particularly where it is part of settlement practice and/or plainly contemplates proceeding against the employer) is not intended to terminate the employer's exposure (*Pace v Hazel Towers, Inc.*, 183 AD2d 588, 589 [1st Dept 1992]; *see also Riviello v Waldron*, 47 NY2d 297, 306-307 [1979]).

On the papers before the court, movants have not established, as a matter of law, that the discontinuances of the resident physicians constitute determinations on the merits exonerating those physicians or otherwise extinguishing the possibility of derivative liability against HSS and/or the Lorich Estate. In addition, to the extent continuance of vicarious theories would operate as a setoff or apportionment issue, the governing scheme (including General Obligations Law § 15-108 and the principles articulated in *Riviello*) does not compel dismissal here on the present record.

Accordingly, the alternative vicarious-liability branch of motion sequence 006 is denied.

### IV.  NYPH's motion for summary judgment

NYPH's motion stands on a materially different footing from motion sequence 006. First, as to NYPH's direct care, NYPH has made a prima facie showing of entitlement to judgment as a matter of law through expert submissions (orthopedics and infectious diseases) opining that NYPH's evaluation, referral, and hospital-based care complied with accepted standards and did not proximately cause plaintiff's injuries.

805037/2015   LAZAR, ADOR vs. LORICH, MD, DEAN G.                    Page 6 of 8
Motion No. 006

6 of 8

In opposition, plaintiff's proof does not create a triable issue that NYPH staff committed an independent departure or that any such departure was a substantial factor in causing the alleged harm. Under *Roques*, once NYPH makes that prima facie showing, plaintiff must rebut it with competent expert proof addressing both departure and causation; generalized disagreement or proof directed primarily at a nonemployee surgeon's operative choices does not suffice to impose direct malpractice liability on the hospital (*Roques*, 73 AD3d at 206-207).

Second, and most importantly, NYPH has demonstrated prima facie that it cannot be held vicariously liable for the alleged malpractice of Dr. Lorich or the residents. A hospital is generally not liable for the acts or omissions of an independent attending physician with privileges at its facility where the physician is retained by (or chosen by) the patient, absent circumstances supporting ostensible agency or another recognized exception (*Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]; *Welch v Scheinfeld*, 21 AD3d 802, 807 [1st Dept 2005]; *Fiorentino v Wenger*, 19 NY2d 407, 414-417 [1967]).

The doctrine of apparent/ostensible agency requires proof of "words or conduct by the hospital" giving rise to a reasonable belief that the physician possessed authority to act on behalf of the hospital, and reasonable reliance by the patient on that perceived relationship (*Pratt v Haber*, 105 AD3d 429, 429 [1st Dept 2013]; *Welch*, 21 AD3d at 807). While ostensible agency may be viable where a patient seeks care from a facility rather than from a particular physician (*Hill*, 67 NY2d at 80-81), the relevant inquiry is fact-specific and depends on the "attendant circumstances."

Here, NYPH proffers deposition testimony and documentary evidence demonstrating that plaintiff understood the relevant distinction: plaintiff presented to the NYPH emergency department, but awaited a specialist identified as Dr. Lorich; plaintiff opted to wait for Dr. Lorich because of the surgeon's reputation; and, critically, following discharge plaintiff continued outpatient treatment with Dr. Lorich at Dr. Lorich's HSS office. Those facts, if credited—as they must be on NYPH's prima facie showing, absent competent rebuttal—negate the essential reliance element for ostensible agency, because they show plaintiff accepted Dr. Lorich's services in reliance on Dr. Lorich's professional skill and status as an HSS physician, not because NYPH held him out as its agent (*Welch*, 21 AD3d at 807; *Pratt*, 105 AD3d at 429).

Plaintiff's opposition does not raise a triable issue contradicting that showing with admissible proof sufficient to permit a factfinder to conclude that NYPH engaged in misleading "words or conduct" and that plaintiff reasonably relied on such conduct in accepting Dr. Lorich's services as NYPH's. Accordingly, NYPH is entitled to summary judgment dismissing the vicarious liability claims.

Third, NYPH is entitled to dismissal of the lack of informed consent cause of action as against it. On these papers, any informed consent allegations relate substantively to surgical decision-making and disclosures by the surgeon. Where NYPH establishes that the surgeon was not its employee or agent and that ostensible agency does not apply, NYPH cannot be held derivatively liable for alleged failures of disclosure by that physician (*Hill*, 67 NY2d at 79-81; *Welch*, 21 AD3d at 807).

805037/2015   LAZAR, ADOR vs. LORICH, MD, DEAN G.                                Page 7 of 8
Motion No. 006

7 of 8

[* 7]

Fourth, NYPH is entitled to dismissal of the negligent hiring claim. Plaintiff has not raised a triable issue, by competent proof, supporting a claim that NYPH negligently hired, supervised, or retained personnel in a manner causally connected to plaintiff's alleged injuries (and the papers reflect no developed factual basis for such a theory on this record). Summary judgment is therefore warranted on that claim as well.

As such, NYPH's motion (sequence 007) is granted in full.

Accordingly, it is hereby:

ORDERED that motion sequence 006 is granted solely to the extent that the complaint is dismissed as against defendant Dr. Nam as abandoned pursuant to CPLR § 3215(c); and it is further

ORDERED that motion sequence 006 is otherwise denied in all respects; and it is further

ORDERED that motion sequence 007 is granted, and the complaint is dismissed in its entirety as against NYPH, with the Clerk directed to enter judgment accordingly in favor of NYPH; and it is further

ORDERED that the action shall continue as against the remaining defendants consistent with this decision and order; and it is further

ORDERED that the parties shall appear for an in-person settlement conference on Wednesday, April 22, 2026, at 12:00 p.m., in Room 308 of the courthouse located at 80 Centre Street, New York, New York; and it is further

ORDERED that, in advance of the conference, appearing counsel shall exchange a settlement demand and any preliminary offers, shall appear with full settlement authority, and shall ensure that their clients are present in person or immediately available by telephone for the duration of the conference.

This constitutes the decision and order of the court.

_____
02/25/2026
DATE

_____
HASA A. KING, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

805037/2015   LAZAR, ADOR vs. LORICH, MD, DEAN G.
Motion No. 006

Page 8 of 8

8 of 8

[* 8]